NO. 24-12882-CC

IN THE

# United States Court of Appeals

## FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA

Plaintiff/Appellee,

v.

EUGENE J. NIKSICH

Defendant/Appellant.

_____

Appeal from the United States District Court for the Northern District of Georgia
Civil Action No. 1:22-CV-02411-SCJ

## APPELLANT'S BRIEF

Vivian D. Hoard
Georgia Bar No. 358119
Kenton J. Coppage
Georgia Bar No. 187190
FOX ROTHSCHILD LLP
999 Peachtree St., N.E., Suite 1500
Atlanta, Georgia 30309
(404) 962-1000

Kip D. Nelson
North Carolina Bar No. 43848
FOX ROTHSCHILD LLP
230 North Elm Street, Suite 1200
Greensboro, North Carolina 27401
(336) 378-5200

Matthew D. Lee
Pennsylvania Bar No. 85914
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, Pennsylvania 19103
(215) 299-2765

*United States v. Niksich*
Docket No. 24-12882-CC

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

Counsel for Defendant/Appellant certifies that the following persons and

entities have an interest in the outcome of the case:

Coppage, Kenton J., Counsel for Defendant/Appellant;

Fox Rothschild LLP, Counsel for Defendant/Appellant;

Hoard, Vivian D., Counsel for Defendant/Appellant;

Johnshoy, Matthew S., Counsel for Plaintiff/Appellee;

Jones, Steve C., United States District Court Judge;

Lee, Matthew D., Counsel for Defendant/Appellant;

Nelson, Kip D., Counsel for Defendant/Appellant;

Niksich, Eugene J., Defendant/Appellant;

Troy, Michael F., Counsel for Plaintiff/Appellee; and

United States of America, Plaintiff/Appellee.

*United States v. Niksich*
Docket No. 24-12882-CC

## CERTIFICATION PURSUANT TO 11TH CIR R. 26.1-3(b)

No publicly traded company or corporation has an interest in the outcome of

the case or appeal.

Respectfully submitted this 10th day of December, 2024.

*/s/ Kenton J. Coppage*
Kenton J. Coppage
Georgia Bar No. 187190
*kcoppage@foxrothschild.com*
FOX ROTHSCHILD LLP
999 Peachtree Street, N.E.
Suite 1500
Atlanta, Georgia 30309
(404) 962-1000 – *Telephone*
(404) 962-1200 - *Facsimile*

C 2 of 2

## STATEMENT REGARDING ORAL ARGUMENT

The underlying merits of this case involve the statutory requirement to file a foreign bank account report (commonly referred to as an "FBAR"). But on a more fundamental level, this case involves one citizen's dealings with the government following his effort to comply with the law. The procedural history of the case is complex, as are the legal issues—including the appropriate application of the doctrines of accord and satisfaction and estoppel when a government agency seeks to disavow a settlement while nonetheless refusing to return the consideration for the settlement. Appellant Eugene Niksich believes that oral argument would assist the Court in resolving the questions presented by this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ......................................................C1

CERTIFICATION PURSUANT TO 11TH CIR R. 26.1-3(b) ..............................C2

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF CITATIONS .........................................................................................iv

INTRODUCTION ....................................................................................................1

STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION ....2

STATEMENT OF THE ISSUES...............................................................................2

STATEMENT OF THE CASE..................................................................................3

     I.      Nature of the Case, Course of Proceedings, and Disposition Below....3

     II.     Statement of Relevant Facts...................................................................4

          A.    Mr. Niksich's Background ..........................................................4

          B.    Mr. Niksich's Negotiations with the IRS .....................................4

          C.    Mr. Niksich's Payment of the Negotiated Settlement Amount.....6

          D.    The IRS's Refusal to Honor the Agreement and Retention of
               the Settlement Payment ................................................................9

STANDARD AND SCOPE OF REVIEW..............................................................12

SUMMARY OF ARGUMENT ...............................................................................13

ARGUMENT AND CITATIONS OF AUTHORITY ............................................14

     I.      Statutory Background...........................................................................14

II.    The IRS Was Bound by Its Agreement ................................................ 14

    A.    Accord and satisfaction barred the claim for additional penalties ...................................................................................... 14

    B.    The district court erred in deferring to the Internal Revenue Manual's interpretation of agency law ........................................ 20

    C.    The IRS was estopped from taking a position inconsistent with its negotiated settlement agreement .................................... 23

III.    As this Court Recently Held, FBAR Penalties are Subject to the Excessive Fines Clause ....................................................................... 28

IV.    The District Court Erred in Deciding As a Matter of Law That Mr. Niksich Acted Willfully ................................................................ 34

CONCLUSION ..................................................................................................... 39

CERTIFICATE OF COMPLIANCE ....................................................................... 40

CERTIFICATE OF SERVICE ................................................................................ 41

## <u>TABLE OF CITATIONS AND AUTHORITIES</u>

**<u>Cases</u>** **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,

    385 F.3d 1324 (11th Cir. 2004) ...................................................................31

*Afewerki v. Anaya Law Grp.*,

    843 F. App'x 847 (9th Cir. 2021) ...............................................................15

*Allen v. Bd. of Pub. Educ.,*

    495 F.3d 1306 (11th Cir. 2007) ...................................................................36

*Austin v. United States,*

    509 U.S. 602 (1993) .....................................................................................29

*Baird v. United States,*

    96 U.S. 430 (1877) .......................................................................................15

*Beasley v. O'Reilly Auto Parts,*

    69 F.4th 744 (11th Cir. 2023) ......................................................................12

*Bedrosian v. United States,*

    912 F.3d 144 (3d Cir. 2018) ........................................................................14

*Begner v. United States,*

    428 F.3d 998 (11th Cir. 2005) .....................................................................15

*Berry v. McGowan,*

    743 F. App'x 321 (11th Cir. 2018) (per curiam) .........................................34

iv

*Bittner v. United States*,

    598 U.S. 85 (2023) .......................................................................... 38

*Burton v. City of Belle Glade*,

    178 F.3d 1175 (11th Cir. 1999) ..................................................... 35

*Butler v. Smith*,

    85 F.4th 1102 (11th Cir. 2023) ...................................................... 34

*Cantu v. City of Dothan*,

    974 F.3d 1217 (11th Cir. 2020) ..................................................... 34

*Chanel, Inc. v. Italian Activewear of Fla., Inc.*,

    931 F.2d 1472 (11th Cir. 1991) ..................................................... 35

*Chi., Milwaukee, & St. Paul Ry. Co. v. Clark*,

    178 U.S. 353 (1900) ....................................................................... 15

*Claridy v. Golub*,

    632 F. App'x 565 (11th Cir. 2015) (per curiam) ........................... 34

*Commercial Union Assurance Co. v. Se. Ventilating, Inc.*,

    159 Ga. App. 443, 283 S.E.2d 660 (1981) .................................... 16

*Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*,

    532 U.S. 424 (2001) ....................................................................... 32

*Cranmer v. Harleysville Ins. Co.*,

    719 F. App'x 95 (3d Cir. 2017) ..................................................... 18

*Crawford v. Andrew Sys., Inc.*,

    39 F.3d 1151 (11th Cir. 1994) ........................................................15

*Day v. Lib. Nat'l Life Ins. Co.*,

    122 F.3d 1012 (11th Cir. 1997) ......................................................34

*Fabric v. Provident Life & Acc. Ins. Co.*,

    115 F.3d 908 (11th Cir. 1997) ........................................................15

*FDIC v. Harrison*,

    735 F.2d 408 (11th Cir. 1984) .................................................23, 26

*Federal Crop Insurance Corporation v. Merrill*,

    332 U.S. 380 (1947) ........................................................................21

*Fredericks v. Comm'r*,

    126 F.3d 433 (3d Cir. 1997) ...........................................................26

*Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Commr's*,

    775 F.3d 1336 (11th Cir. 2015) ......................................................13

*George v. United States*,

    819 F.2d 1008 (11th Cir. 1987) ......................................................35

*Greer v. Ivey*,

    767 F. App'x 706 (11th Cir. 2019) (per curiam) ...........................34

*Hadson Gas Sys., Inc. v. Atlanta Airlines Terminal Corp.*,

    200 Ga. App. 363, 408 S.E.2d 454 (1991) ....................................16

*In re Jacobs*,

　　490 F.3d 913 (11th Cir. 2007) ...................................................34, 35

*In re Mitchell*,

　　633 F.3d 1319 (11th Cir. 2011) ......................................................34

*In re Zimmerman*,

　　262 F. App'x 943 (11th Cir. 2008) (per curiam)...........................34

*Johnson v. 27th Avenue Caraf, Inc.*,

　　9 F.4th 1300 (11th Cir. 2021) .........................................................27

*Knox v. Roper Pump Co.*,

　　957 F.3d 1237 (11th Cir. 2020) ......................................................27

*Kurotaki v. United States*,

　　2023 WL 6604892 (D. Haw. Oct. 10, 2023)..................................39

*Loper Bright Enters. v. Raimondo*,

　　144 S. Ct. 2244 (2024)....................................................................20

*Lotero-Diaz v. U.S. Att'y Gen.,*

　　2023 WL 3644967 (11th Cir. May 25, 2023) (per curiam)...........23

*Mata Chorwadi, Inc. v. City of Boynton Beach*,

　　66 F.4th 1259 (11th Cir. 2023) .......................................................30

*McCroden v. Bressett*,

　　668 F. App'x 867 (11th Cir. 2016) (per curiam)...........................34

*McDonald v. United States*,

    13 Cl. Ct. 255 (1987) ........................................................................16

*Neal H. Howard & Assocs., P.C. v. Carey & Danis, LLC,*

    244 F. Supp. 2d 1344 (M.D. Ga. 2003) ..........................................16

*Niz-Chavez v. Garland*,

    593 U.S. 155 (2021).........................................................................1

*Pratt v. Gov't Emps. Ins. Co.*,

    2022 WL 2125532 (11th Cir. June 14, 2022) (per curiam)...........30

*Rhone v. State Auto. Mut. Ins. Co.*,

    858 F.2d 1507 (11th Cir. 1988) ......................................................16

*Romano-Murphy v. Comm'r*,

    816 F.3d 707 (11th Cir. 2016) ........................................................21

*SEC v. Jarkesy*,

    144 S. Ct. 2117 (2024)....................................................................33

*Souchak v. Close*,

    132 Ga. App. 248, 207 S.E.2d 708 (1974) .....................................16

*Stanfield v. Answering Serv., Inc.*,

    867 F.2d 1290 (11th Cir. 1989) ......................................................34

*State v. Timbs*,

    134 N.E.3d 12 (Ind. 2019) ..............................................................31

*Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*,

    157 F.3d 843 (11th Cir. 1998) ........................................................12

*Tom's Foods Inc. v. Lyng*,

    703 F. Supp. 1562 (M.D. Ga. 1989) ..............................................26

*United States v. 829 Calle de Madero*,

    100 F.3d 734 (10th Cir. 1996) ........................................................31

*United States v. Bajakajian*,

    524 U.S. 321 (1998) ..................................................................29, 32

*United States v. Clemons*,

    2019 WL 7482218 (M.D. Fla. Oct. 9, 2019) ..................................36

*United States v. Flume*,

    2018 WL 4378161 (S.D. Tex. Aug. 22, 2018) ..........................36, 37

*United States v. Gregory*,

    2019 WL 13203768 (N.D. Fla. Oct. 7, 2019) ................................36

*United States v. Hughes*,

    113 F.4th 1158 (9th Cir. 2024) ......................................................14

*United States v. Rum*,

    995 F.3d 882 (11th Cir. 2021) (per curiam) ..................................35

*United States v. Schik*,

    2022 WL 685415 (S.D.N.Y. Mar. 8, 2022) ....................................36

*United States v. Schwarzbaum*,

    24 F.4th 1355 (11th Cir. 2022) ........................................................................14

*\*United States v. Schwarzbaum*,

    114 F.4th 1319 (11th Cir. 2024) ..................................................29, 30, 31, 38

*United States v. Stein*,

    889 F.3d 1200 (11th Cir. 2018) (per curiam) ......................................... 30-31

*United States v. Vernon*,

    723 F.3d 1234 (11th Cir. 2013) .......................................................................34

*United States v. Vonderau*,

    837 F.2d 1540 (11th Cir. 1988) .......................................................................26

*United States v. Williams*,

    489 F. App'x 655 (4th Cir. 2012) ....................................................................35

*Vencor Hosps. v. Blue Cross Blue Shield of R.I.*,

    169 F.3d 677 (11th Cir. 1999) .........................................................................20

## Statutes and Regulations

28 U.S.C. § 1331 ................................................................................................2

28 U.S.C. § 1345 ................................................................................................2

28 U.S.C. § 1355 ................................................................................................2

28 U.S.C. § 1291 ................................................................................................2

28 U.S.C. § 1294 ...................................................................................2

31 U.S.C. § 3717(e)(2) .........................................................................3

31 U.S.C. § 5321(a)(5) ......................................................................3, 14

31 U.S.C. § 5314 ................................................................................14

Fed. R. Civ. P. 56(a) ...........................................................................13

31 C.F.R. § 1010.350(a) ......................................................................14

31 C.F.R. § 1010.306(c) ......................................................................14

31 C.F.R. § 1010.810(g) ......................................................................14

## Other Authorities

IRM § 1.2.2.14.13(32)-(33) .................................................................21

IRM § 4.26.16.6.7 (last revised November 6, 2015) .............................21

IRM § 4.8.8.3.1(1)-(5) (last revised December 1, 2017).......................21

Pamela S. Karlan, *"Pricking the Lines": The Due Process Clause, Punitive Damages, and Criminal Punishment*, 88 Minn. L. Rev. 880 (2004).......................32

## INTRODUCTION

"If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021).

Here, Eugene Niksich mistakenly failed to disclose money held in foreign bank accounts. That mistake technically violated the law. After being apprised of the mistake, Mr. Niksich voluntarily disclosed the accounts to the IRS and corrected his tax returns. Mr. Niksich also negotiated a settlement with the IRS: if Mr. Niksich paid a penalty of $419,000, then the matter would be resolved. Mr. Niksich paid that amount. The IRS kept the money.

But then, the IRS reneged on its promise. It turned around and said that Mr. Niksich had acted willfully and should pay $2.2 *million* in penalties—all the while keeping the amount that Mr. Niksich paid in reliance on the negotiated settlement.

The government didn't stop there. It brought suit in district court, avoided any disclosure of the earlier payment, and then wrongfully represented to the district court that it had refunded at least some of the payment (when it had not). Indeed, the government continues to retain *all* of Mr. Niksich's settlement payment. But on the parties' cross-motions for summary judgment, the district court held that the government was not bound by its agreement, that as a matter of law Mr. Niksich's mistake was actually a willful violation of the law, and that no penalty could be

subject to the Eighth Amendment—a position that this Court has squarely rejected. Mr. Niksich now asks this Court to rectify the district court's errors.

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.  This Court has jurisdiction under 28 U.S.C. § 1291 to review the final decision of the district court.  The district court entered judgment on July 8, 2024.  (Dkt. 58).  Mr. Niksich timely appealed from the judgment on September 4, 2024.  (Dkt. 61).  Venue is proper in this Court under 28 U.S.C. § 1294.

## STATEMENT OF THE ISSUES

The district court granted summary judgment in full to the government.  The issues on appeal are as follows:

1. Where the government agreed to a negotiated amount to resolve a penalty dispute, Mr. Niksich paid that amount, and the government has retained the money, did the district court err in failing to grant Mr. Niksich's motion for summary judgment on the issue of accord and satisfaction?

2. Are FBAR penalties subject to the Excessive Fines Clause of the Eighth Amendment?

3. When there were disputed issues of fact regarding Mr. Niksich's intent and knowledge, did the district court err in deciding as a matter of law that Mr. Niksich willfully violated the law?

2

## STATEMENT OF THE CASE

**I.     Nature of the Case, Course of Proceedings, and Disposition Below**

This case involves the assertion of a civil penalty under 31 U.S.C. §§ 3717(e)(2) and 5321(a)(5) for failure to report money held in foreign bank accounts. On February 18, 2020, Mr. Niksich paid the negotiated penalty amount to the IRS to resolve the dispute.

More than two years later, and ignoring that payment, the government filed a complaint in district court seeking the maximum penalty and interest. (Dkt. 1).[1] Mr. Niksich responded by pointing out that he had already paid a penalty that the IRS had asserted for the same tax years. (Dkt. 16).

Following discovery, the parties moved for summary judgment. (Dkt. 35, 36). The district court denied Mr. Niksich's motion and granted the government's motion in its entirety. (Dkt. 56). The district court entered judgment the same day, requiring Mr. Niksich to pay $2,286,954 as a penalty.[2] (Dkt. 58).

Mr. Niksich timely appealed. (Dkt. 61).

---

[1] The record citations in this brief are to the docket numbers in the district court.

[2] With interest and penalties, the government alleges that Mr. Niksich owes in excess of $3,000,000 as of the date of this filing.

## II.    Statement of Relevant Facts

### A.    <u>Mr. Niksich's Background</u>

Mr. Niksich was born in Croatia and emigrated to the United States with his family as a child.  (Dkt. 35-3 p. 6).  He later obtained U.S. citizenship and is thus a dual Croatian-U.S. citizen.  (*Id.* p. 5).  Mr. Niksich also has a permanent residency permit in Panama, where he intended to retire.  (*Id.* p. 2).

During the years 2006 through 2012, Mr. Niksich had an interest in certain foreign bank accounts.  Mr. Niksich self-prepared his personal income tax returns for those years.  (*Id.* pp. 3-4).  His tax returns did not report his interest in the foreign bank accounts.

### B.    <u>Mr. Niksich's Negotiations with the IRS</u>

In 2013 or 2014, Mr. Nikisch became aware that he should have reported those accounts on his tax returns.  Thus, Mr. Niksich voluntarily disclosed his interest in foreign accounts to the IRS and corrected his previous tax returns utilizing the IRS's Offshore Voluntary Disclosure Program (OVDP).  (Dkt. 35-4 p. 172).

Within the IRS, Mr. Niksich's file was assigned to Revenue Agent Daniel Ford.  (*Id.* pp. 17, 172, 346).  Agent Ford's IRS Group Manager was Michael Counts.  (*Id.* p. 19).

Following his assignment to Mr. Niksich's file, Agent Ford scheduled a meeting with IRS Counsel Brianna Taylor to discuss the facts of the case and to seek

guidance. (*Id*. pp. 27-28, 347). The IRS has never divulged the nature of IRS Counsel Taylor's guidance on grounds of attorney-client privilege. (*Id*. p. 28).

The principal issue in dispute was the amount of penalty that Mr. Nikisch owed for the years 2006-2012. Agent Ford reached out to Mr. Niksich's attorney to request a meeting to discuss a potential resolution of the case. (*Id.* p. 32). The purpose of the meeting was to have all the parties together, including Mr. Niksich himself, to discuss a potential settlement. (*Id.* p. 34).

In May 2019, Agent Ford and IRS Counsel Taylor met with Mr. Niksich, his attorney, and his accountant. (*Id.* p. 35). The IRS team, including the IRS attorney, wanted to settle the case. (*Id.* p. 37). IRS Counsel Taylor explained that the IRS was seeking to move forward with a settlement via a closing agreement known as a Form 906. (*Id.* p. 36). Agent Ford asked for a settlement proposal from Mr. Niksich and his team. (*Id.* pp. 37-38).

So, Mr. Niksich formally submitted a settlement proposal. (*Id.* p. 38). After Agent Ford discussed the settlement proposal with IRS counsel, Agent Ford told Mr. Niksich that the offer was too low. (*Id.* pp. 40-41). Thus, Mr. Nikisch made a revised offer. (*Id.* pp. 42-43). After negotiating a final value determination of $4,191,237 for the amount in the foreign accounts, Agent Ford indicated that a penalty in the amount of $419,123 (10% of the value determination) would resolve the dispute. (*Id.* pp. 43-46, 106, 350-51).

The IRS team concluded that the penalty amount was reasonable and appropriate. (*Id.* p. 46). Group Manager Counts emailed Agent Ford and IRS Counsel Taylor: "I agree that looks like a pretty fair offer. I am good with it, if everyone else is." (*Id.* pp. 101, 370). IRS Counsel Taylor concurred: "I am good with the settlement. If you will get me the draft closing agreement, I can update it for this settlement." (*Id.* pp. 101-02, 370). Agent Ford thanked IRS Counsel Taylor "for all of your help in getting the 906 approved for issuance." (*Id.* pp. 102, 368).

Agent Ford was also told by IRS counsel that he could share the Form 906 with Mr. Niksich. (*Id.* p. 49). Thus, Agent Ford informed Mr. Niksich that the Form 906 had been approved and was ready for issuance. (*Id.* pp. 49-50). Agent Ford met with Mr. Niksich's attorney and presented the Form 906 to her. (*Id.* pp. 52-53). The Form 906 identified a miscellaneous penalty in the amount of $419,124.[3] (*Id.* p. 378).

### C.    Mr. Niksich's Payment of the Negotiated Settlement Amount

Mr. Niksich signed the Form 906 and sent it to Agent Ford. (*Id.* pp. 55-57, 380). By signing the form, Mr. Niksich agreed to pay the $419,124 penalty for not reporting his interest in foreign bank accounts for years 2006 through 2012. (*Id.* p. 57). Agent Ford counter-signed the Form 906 and acknowledged its receipt on behalf of the IRS. (*Id.* pp. 58, 381). Agent Ford confirmed with Mr. Niksich's

---

[3] Although Agent Ford initially calculated a penalty of $419,123, the final penalty calculation was $419,124, which was the penalty amount indicated in the Form 906.

accountants the remaining balance due from Mr. Niksich (after application of earlier payments applied to Mr. Niksich's account) to satisfy the terms of the settlement and close the case. (*Id.* pp. 61-62, 386-387).

At the same time, IRS Counsel Taylor emailed Agent Ford to ask whether he had closed the Niksich case, because she wanted to determine whether she could close her own file. (*Id.* pp. 393-95). Agent Ford replied that he had received the signed Form 906 and that he expected final payment within two weeks. (*Id.* pp. 116-17, 393). IRS Counsel Taylor replied: "Perfect. Thanks for the update and nice work negotiating a good settlement for the government!" (*Id.* p. 393).

The next day, IRS Counsel Taylor signed internal closing documents indicating that she had negotiated a settlement and drafted a closing agreement. Above IRS Counsel Taylor's signature line, the form stated: "Since all necessary action by this office has been completed, the case file is being closed." (Dkt. 35-6).

On February 18, 2020, Mr. Niksich's accountant hand delivered to Agent Ford a personal check from Mr. Niksich payable to the Department of Treasury in the amount of the remaining balance to satisfy the terms of the settlement. (Dkt. 35-4 pp. 120-21, 396). By signing the Form 906 and making the full payment, Mr. Niksich did the only things required of him under the parties' agreement. (*Id.* p. 258). Agent Ford admitted that Mr. Niksich did both of those things and that Mr. Niksich's check was "processed." (*Id.* pp. 79, 258).

Following receipt of the settlement payment, Agent Ford determined that the case was ready for closure. (*Id.* p. 64). Group Manager Counts instructed Agent Ford to close the case as soon as he could. (*Id.*). Agent Ford also advised IRS counsel that all of the requirements had been complied with and that he was going to close the case. (*Id.* pp. 65-66). Further, Agent Ford completed a Form 8278, which documents penalties other than tax penalties, and the form was approved by Group Manager Counts. (*Id.* pp. 66-67, 400). The Form 8278 indicated that the agreed-upon penalty amount was $419,124. (*Id.* pp. 126, 400). Agent Ford and Group Manager Counts also signed a Form 895, indicating that the case was an "Agreed Case, Form 906." (*Id.* pp. 129-30, 401-02). According to Agent Ford, an "Agreed Case" is "where both parties and all parties – who has the permission to bind, sign – that's agreed." (*Id.* p. 131).

Agent Ford followed standard IRS procedures to close the case: he transmitted the case to Group Manager Counts, who in turn transferred the case to IRS Technical Services for agreed closure. (*Id.* p. 355).

However, someone in IRS Technical Services believed that the case needed to be reviewed with additional IRS counsel. (*Id.* pp. 70-71). The IRS has never identified the advice from the additional counsel on grounds of privilege. (*Id.* p. 73). All that is known is that somebody within the IRS drafted "new 906s." (*Id.* p. 75). The IRS has never divulged why new Forms 906 were drafted. (*Id.* pp. 75-76, 165).

8

Nor has the IRS indicated whether the new Forms 906 contained different terms or a different proposed payment amount. (*Id.* pp. 200-01). The new Forms 906 were not provided to Mr. Niksich. (*Id.* pp. 76, 165, 174). The IRS has never identified a problem with the original Form 906. (*Id.* pp. 203-04). And nobody at the IRS has stated that the agreed-upon penalty paid by Mr. Niksich was too low. (*Id.* pp. 201-02).

### D.  The IRS's Refusal to Honor the Agreement and Retention of the Settlement Payment

On June 23, 2020, Agent Ford's manager (Michael Counts) completed a "Sensitive Case Report" on which he indicated this case was "likely to attract media or congressional attention" and that it contained a "unique or novel issue." (Dkt. 35-5 p. 4). In the "Case or Issue Summary" section of the report, Mr. Counts explained that "the taxpayer and his representatives agreed to the settlement offer and submitted all necessary documents, forms, paid all delinquent taxes, penalties and interest," and that the "case was closed to Tech Services." (*Id.*) (cleaned up). But upon closure, "Senior Offshore Counsel, Dan Price" was consulted and ultimately, the IRS was no longer going to honor the settlement. (*Id.* pp. 4-5). The Sensitive Case Report explained that this was first communicated to Mr. Niksich's representatives on June 22, 2020—the day before Mr. Counts completed the Sensitive Case Report.

During that June 22, 2020 call, Agent Ford advised Mr. Niksich's attorney that the IRS would not enter into a closing agreement because the IRS Special Counsel contended that Mr. Niksich had been removed from the voluntary disclosure program, rather than having opted out.  (Dkt. 35-4 pp. 84, 254).[4]  Although that was the reason given to Mr. Niksich and his counsel at the time by the IRS, that was not the only reason. (Dkt. 35-4 p. 254).   According to Agent Ford in his deposition, there were "many issues around the 906."  (*Id*. pp. 254-56).   Those reasons, according to Agent Ford, were not communicated to Mr. Niksich because they were "attorney-client privileged information."  (*Id*. p. 255; Dkt. 43-1 p. 17).[5]   The IRS even declined to reveal whether the other reasons were "specific to Mr. Niksich." (Dkt. 35-4 p. 255; Dkt. 43-1 p. 18).  During that call, Mr. Niksich made his first request for return of the settlement payment in the event that the IRS was no longer

---

[4]  The government was incorrect about that as well. IRS records make clear that Mr. Niksich exercised his right to opt-out of the disclosure program. (*See* Dkt. 35-4 pp. 433-35) (internal IRS memorandum entitled "Short Statute – OVDI-Opt Out Summary"' ("[S]ometime in 2017, the Taxpayer was opted out of the OVDI program and the case was transferred to RA Melissa Irons.")))). Indeed, the district court itself included in its statement of the facts: "After filing his corrected returns and FBARs, and providing the IRS bank statements and other documentation required under the OVDP, Mr. Niksich subsequently elected to 'opt-out' of the OVDP, which the IRS opt-out committee approved in March 2017." (Dkt. 56 pp. 20-21).

[5]  During his deposition, the IRS's corporate representative disclaimed any knowledge about the contents of the Sensitive Case Report and was unable to identify a person who could answer questions about it.  (Dkt. 35-4 pp. 177-84).

going to honor the agreement.  (Dkt. 35-4 pp. 186-89).  Agent Ford, as the IRS's corporate designee, later agreed that it would be reasonable for a taxpayer in Mr. Niksich's position to expect a refund of the settlement payment if the IRS refused to honor the agreement.  (*Id.* pp. 260-61).

The day following the phone call, the IRS sent correspondence to Mr. Niksich proposing the assessment of the maximum penalties for the purportedly willful failure to file a complete and accurate FBARs for calendar years 2006 through 2012—the exact same years at issue in the negotiated settlement. (*See* Dkt. 35-9 pp. 12-17).  These proposed penalties totaled $2,286,954. (*Id.* p. 17).  The IRS calculated the proposed $2,286,954 penalty pursuant to the "maximum value" contained in Mr. Niksich's foreign accounts during the years in question, even though that "high water mark" was artificially inflated due to paper gains in the accounts that Mr. Niksich never realized when certain stock values plummeted.  (*Id.* p. 16-17; Dkt. 39-1 pp. 58-59).  The correspondence gave Mr. Niksich 30 days to protest the proposed penalties and request an appeals conference.  (Dkt. 35-9 p. 13).

Mr. Niksich responded, indicating disagreement with the additional penalty determination and requesting an appeals conference. (*See* Dkt. 35-5 pp. 13-21).  In that response, Mr. Niksich also requested (again) that his $419,124 settlement payment be refunded.  (*Id.* p. 14).

11

Two years later, the government filed this action. (Dkt. 1). To this day, the IRS has retained Mr. Niksich's settlement payment—even though Mr. Niksich's 2020 tax account transcript shows a credit for the $419,124 amount paid. (*See* Dkt. 35-7; *see also* Dkt. 35-4 pp. 61-63).[6]

## STANDARD AND SCOPE OF REVIEW

This Court's review of a district court's grant of summary judgment is plenary. *Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co.*, 157 F.3d 843, 844 (11th Cir. 1998). The district court's ruling is reviewed de novo, meaning "without deference to its decision." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 753 (11th Cir. 2023).

Summary judgment can only be granted when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of

---

[6] Remarkably, during this litigation, the United States asserted that the IRS "did not 'retain' [Mr. Niksich's] payment under the purported 'agreement;'" that the IRS "never retained Mr. Niksich's payment to its benefit;" and that at least a portion of the payment has been refunded to him. (Dkt. 43 pp. 2, 7-8, 9). In fact, the deposition of Robert Miller, the corporate designee for the IRS with respect to these issues, confirms that the entire penalty amount has been retained. (Dkt. 35-8 pp. 35, 40, 144-145). The payment of the penalty consisted of two sums, one for $261,806.54, which was included in the payment made by Mr. Niksich following tender of the settlement agreement and the application of an existing credit of $157,317.46, which sums add up to the $419,124 penalty. (*Id*.). As the district court noted: "Mr. Miller agrees that the payment of $157,317.46 has not been returned to Mr. Niksich but remains unapplied to any tax liability" and "Mr. Miller agreed that $261,806.54 has not been refunded to Mr. Niksich, and is still 'sitting on the 2020 module.'" (Dkt. 56 p. 26).

law." Fed. R. Civ. P. 56(a). At the summary judgment stage, a court "must construe the facts and draw all rational inferences therefrom in the manner most favorable to the nonmoving party." *Ga. State Conf. of the NAACP v. Fayette Cnty. Bd. of Commr's,* 775 F.3d 1336, 1343 (11th Cir. 2015).

<b><u>SUMMARY OF ARGUMENT</u></b>

The district court erred in denying Mr. Niksich summary judgment and granting summary judgment to the government. Representatives of the IRS negotiated a settlement with Mr. Niksich and accepted his payment for the negotiated amount. The IRS has kept that money. Those acts constitute accord and satisfaction and estop the government from asserting additional penalties. Judgment should be entered in Mr. Niksich's favor. The district court erred in holding otherwise and, along the way, erred in deferring to an internal IRS manual to determine questions of agency law.

This Court need go no further. But even if it does, the district court erred for two additional reasons. Second, the district court held that FBAR penalties are not subject to the Eighth Amendment. This Court recently held the opposite. Second, the district court held as a matter of law that Mr. Niksich acted willfully. In reality, the question of willfulness could not be decided on summary judgment. Mr. Niksich has a right to have his liability determined by a jury of his peers.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I.    Statutory Background.

A provision of the Bank Secrecy Act of 1970 instructed the Secretary of the Treasury to prescribe rules that require individuals to file an annual report identifying certain relations with foreign banks. 31 U.S.C. § 5314. By now, "[e]very year, U.S. citizens with over $10,000 in foreign bank accounts must disclose information about those accounts to the IRS on a Report of Foreign Bank and Financial Accounts or 'FBAR' form." *United States v. Schwarzbaum*, 24 F.4th 1355, 1358 (11th Cir. 2022); *see also* 31 C.F.R. §§ 1010.350(a), 1010.306(c). Individuals who fail to disclose such information are subject to penalties. 31 U.S.C. § 5321(a)(5)(A). However, "the amount of the penalty varies depending on whether the violation was willful or not willful." *United States v. Hughes*, 113 F.4th 1158, 1160 (9th Cir. 2024). A *non*-willful violation can only be penalized up to $10,000, but a *willful* violation can be penalized up to $100,000 or even 50% of the balance in the account. 31 U.S.C. § 5321(a)(5). "The IRS has by delegation that authority to enforce the FBAR statute and implementing regulations." *Bedrosian v. United States*, 912 F.3d 144, 151 (3d Cir. 2018) (citing 31 C.F.R. § 1010.810(g)).

### II.    The IRS Was Bound by Its Agreement.

#### A. Accord and satisfaction barred the claim for additional penalties.

The government's claims in this case were barred, and summary judgment should have been entered in Mr. Niksich's favor, because the government negotiated a penalty amount to resolve the dispute and then accepted Mr. Niksich's payment in that amount.

"[W]here an aggregate amount is in dispute, the payment of a specified sum conceded to be due, that is, by including certain items but excluding disputed items, on condition that the sum so paid shall be received in full satisfaction, will be sustained as an extinguishment of the whole." *Chi., Milwaukee, & St. Paul Ry. Co. v. Clark*, 178 U.S. 353, 367 (1900). This principle is commonly referred to as "accord and satisfaction." It applies as much to the federal government as to any other party. *See, e.g.*, *Baird v. United States*, 96 U.S. 430, 431-32 (1877). For a case based on federal question jurisdiction, the issue is analyzed under principles of the federal common law. *See, e.g.*, *Crawford v. Andrew Sys., Inc.*, 39 F.3d 1151, 1153 (11th Cir. 1994); *Afewerki v. Anaya Law Grp.*, 843 F. App'x 847, 849 (9th Cir. 2021); *see also Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005) ("Federal courts use federal common law to evaluate government contracts.").

When a party accepts money in settlement of a claim, without objection, it is "equivalent to an acceptance of the payment in satisfaction." *Baird*, 96 U.S. at 432; *see also Fabric v. Provident Life & Acc. Ins. Co.*, 115 F.3d 908, 914 (11th Cir. 1997) (explaining under Florida law that "[w]here a party cashes a check but protests that

additional payment is necessary to fully satisfy the alleged debt, accord and satisfaction operates to bar that party's claim for further payment").  Retention of the money will "operate as an acceptance by the creditor of the debtor's offer to give substituted performance." *McDonald v. United States*, 13 Cl. Ct. 255, 261 (1987).

The law of Georgia (where Mr. Niksich resides) is in accord.  *See, e.g.*, *Rhone v. State Auto. Mut. Ins. Co.*, 858 F.2d 1507, 1510 (11th Cir. 1988).  "In Georgia, the general rule on accord and satisfaction is that 'if a debtor remits to the creditor a sum of money, less than the amount actually due, upon the condition, either express or implied, that it is in satisfaction of the creditor's claim, and the latter accepts and retains the money, an accord and satisfaction results." *Hadson Gas Sys., Inc. v. Atlanta Airlines Terminal Corp.*, 200 Ga. App. 363, 364, 408 S.E.2d 454, 455 (1991) (quoting *Souchak v. Close*, 132 Ga. App. 248, 250, 207 S.E.2d 708 (1974)); *see also Neal H. Howard & Assocs., P.C. v. Carey & Danis, LLC,* 244 F. Supp. 2d 1344, 1347 (M.D. Ga. 2003) (same).  "It is not necessary that a check or the accompanying correspondence contain magic words such as 'payment in full,' 'in full consideration' or 'in final payment.'" *Commercial Union Assurance Co. v. Se. Ventilating, Inc*., 159 Ga. App. 443, 445, 283 S.E.2d 660, 662 (1981); *see also Hadson Gas*, 200 Ga. App. at 365, 408 S.E.2d at 456.  "[I]f the sum is accepted in full settlement of the total indebtedness, accord and satisfaction will result." *Rhone*, 858 F.2d at 1510.

16

Here, the IRS obtained from Mr. Niksich the sum of $419,124, which was tendered by Mr. Niksich to settle the IRS's disputed claim for willful FBAR penalties for the tax years 2006 through 2012.  That payment was made pursuant to an agreement that it was in settlement of FBAR penalties for those years.  The agreement was documented in the Form 906 prepared and reviewed by IRS counsel, accepted by Agent Ford, and approved by one or more of his superiors, including Group Manager Counts.  It was also confirmed by email communication between Mr. Niksich's accountant and Agent Ford.  Under the doctrine of accord and satisfaction, the government's receipt and retention of that amount barred its effort in this case to obtain greater penalties for the same years.

As agents of the IRS acting within the scope and course of their duties, Agent Ford, his manager, and IRS counsel negotiated, approved, and accepted Mr. Niksich's signed closing agreement and settlement payment.  Their actions bound the IRS.  The accord and satisfaction was accomplished when the IRS engaged in settlement negotiations with Mr. Niksich, reached an understanding concerning the amount of the disputed penalties, received Mr. Niksich's tender of the payment in that amount, negotiated that settlement payment, and, most crucially, retained that payment.

If the IRS intended to repudiate its earlier agreement, it was incumbent upon the government to return Mr. Niksich's settlement payment.  That is particularly true

17

in the face of multiple requests by Mr. Niksich that the money be refunded if the IRS was not going to honor its agreement. Ignoring those requests, the government not only retained Mr. Niksich's settlement payment but also filed this lawsuit seeking *additional* penalties for the same years. It was barred from doing so, and summary judgment should have been entered in Mr. Niksich's favor.

The district court waved away this issue by concluding that Agent Ford did not have authority to bind the IRS. (*See* Dkt. 56 p. 58). Yet, the district court never addressed the authority wielded by the others who were involved—including Group Manager Counts and IRS Counsel Taylor. There is no reason to doubt that those individuals had the authority to act on behalf of the IRS.

Further, even if Agent Ford, his manager, and his counsel did not have actual authority, it was certainly reasonable for Mr. Niksich to understand that they did. In other words, those individuals had *apparent* authority to settle the dispute. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (3d) of Agency § 2.03 (2006). "At a minimum," Mr. Niksich "reasonably relied" on the signed agreement and the retention of the money "to show that [the IRS] accepted the check to resolve the dispute." *See Cranmer v. Harleysville Ins. Co.*, 719 F. App'x 95, 101 (3d Cir. 2017).

Agent Ford acknowledged that "any reasonable revenue agent would have believed we would have been done…." (Dkt. 35-4 pp. 260-61).

Moreover, focusing on the individuals' authority misses the point because it is the IRS itself that retained the payment. The entity's actions accomplished the accord and satisfaction in this case.

Of course, the practical problems with the district court's ruling should not be overlooked. If the district court's approach to accord and satisfaction were the law, it would undermine taxpayer-agency negotiations and the entire tax administration process. Taxpayers could never rely on any representations made by an IRS team, and any resolution would be subject to rejection at any time and for any reason *after* payment is tendered—without even the possibility of recovering the "rejected" payment. That cannot be right.

Because there was an accord and satisfaction, the district court erred in granting summary judgment to the government. Instead, Mr. Niksich's own motion for summary judgment should have been granted. That would moot the remainder of this case.

At the very least, there were genuine disputes of material fact about these issues. The district court did not consider the facts in the light most favorable to Mr. Niksich; the district court considered the facts in the light most favorable to the government. This Court held that summary judgment could not be granted when a

check was issued and deposited but "[g]enuine issues of material fact exist[ed] regarding whether there was an accord and satisfaction on this claim." *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 169 F.3d 677, 682 (11th Cir. 1999). If the parties reached an agreement, and if the negotiating individual had actual or apparent authority, then a factfinder could determine that there was an accord and satisfaction. *Id.* The same is true here.

### B. The district court erred in deferring to the Internal Revenue Manual's interpretation of agency law.

In its analysis and refusal to grant summary judgment to Mr. Niksich, the district court also erred by relying on an internal IRS manual. The Supreme Court recently reiterated that courts cannot defer to an executive agency's interpretation of the law. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244 (2024). After all, "Article III of the Constitution assigns to the Federal Judiciary the responsibility and power to adjudicate 'Cases' and 'Controversies.'" *Id.* at 2257. The Constitution was designed "to allow judges to exercise that judgment independent of influence from the political branches." *Id.* Thus, in *Loper Bright* the Court reiterated the "unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury* [*v. Madison*]: that courts decide legal questions by applying their own judgment." *Id.* at 2261. When it comes to the field of "legal interpretation, that has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Id.* at 2273.

But here, the district court elected to abide by the IRS's internal manual about who has authority within the byzantine organization to take certain actions. Aside from the fact that the Internal Revenue Manual does not have the force of law, *Romano-Murphy v. Comm'r*, 816 F.3d 707, 719 (11th Cir. 2016), the district court's reliance on the document was misplaced. The legal analysis of agency is governed by federal common law, not by the IRS's internal manual. While *Congress* can explicitly limit the authority of government officials, *see Federal Crop Insurance Corporation v. Merrill*, 332 U.S. 380, 384 (1947), the IRS is not Congress.

Further, the district court just got it wrong. The manual in existence during the relevant time period provided that "[o]fficials authorized to enter into and approve closing agreements" could approve FBAR agreements. IRM § 1.2.2.14.13(32)-(33) (last revised April 11, 2012). But that section did not otherwise define which officials had authority. *Id*. Without a clear definition, it was reasonable for Mr. Niksich to believe that Agent Ford, Group Manager Counts, and/or IRS Counsel Taylor were authorized to issue and approve an FBAR closing agreement. Other provisions of the manual confirmed that Agent Ford and Group Manager Counts were authorized to determine the amount of FBAR penalty to be assessed, and IRS counsel was authorized to review and approve the closing agreement. *See* IRM § 4.26.16.6.7 (last revised November 6, 2015); *id.* § 4.8.8.3.1(1)-(5) (last revised December 1, 2017). Those individuals each exercised authority regarding

21

the negotiations with Mr. Niksich that led to the issuance of a closing agreement. Mr. Niksich relied on their representations that compliance with the terms of the agreement would resolve his disputed FBAR liability. Mr. Niksich held up his end of the bargain by satisfying all terms of the agreement. The IRS has not.

Moreover, the district court's rationale for relying on the Internal Revenue Manual was flawed. The court noted that it was "concerned with reliance upon general authority . . . which state that 'FBAR penalties do not arise under Internal Revenue laws.'" (Dkt. 56 p. 55). And the court noted that when pursuing FBAR penalties, the IRS "is not acting under Title 26 but, instead, is acting under the authority of Title 31. Provisions of the IRC generally do not apply to FBARS." (*See id*. pp. 55-56). But after correctly identifying reasons for *not* relying upon the manual governing Title 26 proceedings, the court decided to apply the manual anyway based on the court's reading of the "actual purported agreement" identifying the settlement payment as a "miscellaneous penalty assessed under '**Title 26** of the United States Code.'" (*Id*. p. 56). This approach was improper. Neither Agent Ford nor anyone else involved in drafting Form 906 has license to change the law. The FBAR penalty arises under Title 31, not Title 26, and the mere reference to Title 26 on the agreement does not somehow justify the contrary conclusion.

The district court erred in relying on the Internal Revenue Manual as a way to absolve the IRS of its obligations.

22

### C. The IRS was estopped from taking a position inconsistent with its negotiated settlement agreement.

In addition to accord and satisfaction barring the government's claims in this case, the government was estopped from pursuing additional penalties for the same tax years. Generally, equitable estoppel applies when three elements are present:

(1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things;

(2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and

(3) detrimental reliance by the other party upon the state of things so indicated.

*FDIC v. Harrison*, 735 F.2d 408, 413 (11th Cir. 1984); *see also Lotero-Diaz v. U.S. Att'y Gen.,* 2023 WL 3644967, at \*4 (11th Cir. May 25, 2023) (per curiam). And when the estoppel is being asserted against the government, a party must also prove "some affirmative misconduct." *Lotero-Diaz*, 2023 WL 3644967, at \*4.

Here, the record contains at least some evidence supporting the elements of estoppel. For example, the undisputed facts show that the IRS's representatives engaged in the following words, acts, and conduct:

- *Telling* Mr. Niksich the IRS was amenable to settlement and later *confirming* that such settlement could be performed; then

- *Meeting* face-to-face with Mr. Niksich and his representatives and *negotiating* the terms of the settlement agreement; then

- *Inviting* Mr. Niksich's representative to submit a written settlement proposal; then

- *Submitting a counteroffer* to Mr. Niksich's written settlement proposal; then

- *Drafting, approving, and tendering* the final settlement agreement to Mr. Niksich; then

- *Instructing* Mr. Niksich to remit payment to the IRS pursuant to the final settlement agreement; then

- *Accepting* Mr. Niksich's payment; and finally

- *Retaining* the payment in the face of requests for a return of the money, even as the government pursued additional penalties.

These words, acts, and conduct caused Mr. Niksich to believe that the settlement was final and approved and that the dispute was over.

In addition, the evidence suggests that the IRS's conduct was willful, or at least negligent, and involved affirmative misconduct. On August 10, 2018, Agent Ford discussed the case with Mr. Niksich's attorney "and requested a meeting with her and [Mr. Niksich *in an effort to obtain her proposal* to resolve the case under Counsel's jurisdiction." (Dkt. 35-4 p. 348) (emphasis added). Agent Ford acknowledged that he was asking Mr. Niksich's attorney, as Mr. Niksich's representative, to submit a settlement proposal. (*Id.* p. 33). According to Agent Ford, the primary purpose of the proposed meeting was to discuss settlement. (*Id.* pp. 33-34). Agent Ford agreed that the IRS team (of which he was a part) solicited

24

a settlement proposal from Mr. Niksich.  (*Id.* pp. 37-38).  And at the meeting, IRS counsel explained that the IRS was "*seeking to move forward with a settlement* via closing agreement (F-906) and requested [Mr. Niksich's attorney] to provide an offer for Exam and IRS Counsel to consider as part of a settlement of the case." (*Id.* p. 349) (emphasis added).

The IRS solicited settlement discussions, caused Mr. Niksich to believe that a settlement had been reached, accepted his payment (tendered by him in good faith), but then declined to recognize the settlement – apparently upon the undisclosed advice of an IRS attorney – and refused to return the money.  Whether the IRS's actions leading up to retention of the payment were willful or only negligent, they involved affirmative misconduct upon the refusal to return Mr. Niksich's money in the face of his requests.  At the very least, Mr. Niksich should be able to make that argument to a factfinder.

This was not a simple misunderstanding between parties; this was deliberate action by an agency of the United States government.  IRS representatives led Mr. Niksich to believe that the parties had reached an agreement.  But then, upon undisclosed advice from some other attorney, the IRS engaged in a bait-and-switch. That is why estoppel should apply. [7]

---

[7] In addition to the traditional estoppel elements, some earlier decisions of this Court stated that a party asserting an estoppel claim against the government must also show: (a) the government was acting in a private or proprietary capacity rather than

Finally, Mr. Niksich detrimentally relied on the IRS's actions and representations. Such detrimental reliance began when the IRS advised Mr. Niksich that it was amenable to settling his case. From that point on (and for multiple years thereafter), Mr. Niksich expended significant time and legal fees, all for purposes of a final settlement. Mr. Niksich also paid the negotiated settlement amount of $419,124, which the IRS has continued to retain.

In sum, the government was equitably estopped from pursuing penalties for the same tax years for which it had already negotiated a settlement and received the agreed-upon amount.

---

a public or sovereign role, and (b) the government's agent was acting within the scope of his or her authority. *See United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir. 1988) (citing *Harrison*, 735 F.2d at 410). More recent cases have not discussed that test. But even if that test were applicable, those additional elements are satisfied here. Regarding the proprietary/sovereign distinction, "[a]ctivities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel while actions involving the exercise of exclusively governmental or sovereign powers are not." *Harrison*, 735 F.2d at 411 (concluding that the FDIC "acted in a proprietary capacity and therefore [was] subject to the rules of equitable estoppel"). An executive agency assessing a penalty against a particular individual is acting in a proprietary capacity and is, therefore, subject to estoppel. *See, e.g.*, *Tom's Foods Inc. v. Lyng*, 703 F. Supp. 1562, 1570 (M.D. Ga. 1989). Regarding authority, the IRS's representatives (including the revenue agent, group manager, and senior IRS counsel) were acting within the scope of their responsibilities when they drafted, approved, and tendered to Mr. Niksich the final closing agreement. *See Fredericks v. Comm'r*, 126 F.3d 433, 440 (3d Cir. 1997) ("The acts or omissions of the officers of the government, if they be authorized to bind the United States in a particular transaction, will work estoppel against the government.").

Nevertheless, the district court rejected the estoppel theory as a matter of law based on the same flawed rationale used for accord and satisfaction: that Mr. Niksich's arguments regarding the government's refusal to return the money were "speculative." (Dkt. 56 pp. 67, 68). In reality, there is nothing speculative about the IRS's retention of the settlement payment—and certainly not at the summary judgment stage. The district court also ignored entirely Mr. Niksich's actual (and undisputed) requests for return of the money and his negotiations with the IRS to reach the agreement in the first place.

To the extent there was any gap in the evidence, it was only because the IRS asserted attorney-client privilege over its internal discussions. That should have been held against the IRS, not Mr. Niksich. After all, the attorney-client privilege "is a shield, not a sword, meaning that a party may not use the privilege to prejudice his opponent's case." *Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1313 (11th Cir. 2021) (internal quotation omitted). "Thus, a party waives the attorney-client privilege when that party places privileged information in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248-49 (11th Cir. 2020). The IRS's convenient invocation of the privilege here certainly was unfair to Mr. Niksich. Yet,

27

the district court granted judgment as a matter of law on the issue of estoppel—without even being apprised of the underlying facts.

At the very least, a factfinder should be permitted to decide whether the IRS is estopped from reneging on its promise.  The district court erred in determining as a matter of law that the IRS could not be estopped from assessing and collecting additional FBAR penalties from Mr. Niksich based on the negotiated resolution on which Mr. Niksich reasonably relied to his detriment.   The IRS spent years reviewing, analyzing, and negotiating a settlement with Mr. Niksich.  More than five years after Mr. Niksich initiated his voluntary disclosure, the IRS finally reached what it believed was "a good settlement for the government." The settlement was memorialized in a written closing agreement that was carefully drafted and reviewed by IRS counsel, signed by Mr. Nikisch, acknowledged in writing by Agent Ford, and approved by Group Manager Counts.  The agreement expressly resolved all issues arising out of Mr. Niksich's voluntary disclosure, including any penalty, for the years 2006 through 2012.   The agreement was effectuated when Mr. Niksich tendered, and the IRS accepted, $419,124 in satisfaction of the negotiated amount. If he is not granted summary judgment in his favor, Mr. Niksich should have the opportunity to convince a factfinder that the IRS is estopped from assessing any additional amounts against Mr. Niksich regarding this same dispute.

### III.   As This Court Recently Held, FBAR Penalties Are Subject to the Excessive Fines Clause.

This Court need proceed no further if it concludes that the additional penalties are barred by accord and satisfaction or estoppel as a matter of law. Nevertheless, the district court also erred in concluding as a matter of law that FBAR penalties are not subject to constitutional limitations.

The Eighth Amendment to the U.S. Constitution prohibits the imposition of "excessive fines." U.S. Const. amend. VIII. If a civil monetary penalty serves "either retributive or deterrent purposes," it is a "punishment" that is subject to the Excessive Fines Clause. *Austin v. United States*, 509 U.S. 602, 610 (1993); *see also United States v. Bajakajian*, 524 U.S. 321, 331 n.6, 332 (1998) (reiterating that the prohibition applies when a penalty serves as "punishment even in part"). That is, our Constitution precludes the government from imposing fines that are grossly disproportional to an individual's alleged misconduct.

Contrary to the district court's conclusion, FBAR penalties *are* subject to the Excessive Fines Clause. This Court recently held as much in a published opinion. *United States v. Schwarzbaum*, 114 F.4th 1319 (11th Cir. 2024). The Court explained that FBAR penalties "are in substantial measure punitive in nature." *Id.* at 1325. After all, the purpose of the penalties under the current statutory scheme is "to deter violations of the reporting requirement." *Id.* at 1334. The Court reviewed "the history of the Excessive Fines Clause and its interpretation in the federal

courts." *Id.* at 1328. And, ultimately, the Court concluded "that FBAR penalties are 'fines' within the meaning of the Excessive Fines Clause."[8] *Id.*

*Schwarzbaum* squarely rejected the lone ground pressed by the government and ruled on below (that the Eighth Amendment does not apply to FBAR penalties). (*See* Dkt. 36-1 p. 24; Dkt. 56 p. 75). That alone is basis to reverse the district court's decision.

Procedurally, then, the case should be remanded for factual development on whether the asserted FBAR penalty is unconstitutionally excessive. *Cf. Pratt v. Gov't Emps. Ins. Co.*, 2022 WL 2125532, at *1 (11th Cir. June 14, 2022) (per curiam) (vacating summary judgment and remanding for consideration in light of intervening circuit precedent). Unlike in *Schwarzbaum* (which involved a full bench trial), Mr. Niksich had no occasion to develop the factual record supporting his excessiveness defense, and the parties had no occasion to brief the issue below. As a general matter, of course, this Court "may affirm [a] judgment on any ground supported by the record." *Mata Chorwadi, Inc. v. City of Boynton Beach*, 66 F.4th 1259, 1263 (11th Cir. 2023). But that principle has little application when the factual record has yet to be developed as to an alternative ground. *Cf. United States v. Stein*,

---

[8] The government has recently filed a petition for rehearing in *Schwarzbaum*, but only on the fact-dependent rulings—not on the threshold question of whether the Excessive Fines Clause applies to FBAR penalties. *See* Pet. For Reh'g, *United States v. Schwarzbaum*, No. 22-14058 (11th Cir. Nov. 5, 2024) (Dkt. 39).

889 F.3d 1200, 1202 (11th Cir. 2018) (per curiam) ("Because these arguments were never presented by the government to the district court, we decline to consider them in the first instance.").

Here, for example, the excessiveness inquiry turns on "the facts of [the] particular case" and calls for applying a "non-exhaustive" list of factors. *Schwarzbaum*, 114 F.4th at 1335-36; *see also United States v. 829 Calle de Madero*, 100 F.3d 734, 738 (10th Cir. 1996) (noting that "these cases are 'factually intensive'" and "declin[ing] to prescribe a one-size-fits-all test or a weighting for the factors"); *State v. Timbs*, 134 N.E.3d 12, 35-36 (Ind. 2019) (reasoning that the excessiveness analysis looks at "the totality of the circumstances"). This analytic framework is peculiarly unsuited for first-pass decision-making by the appellate courts—and especially so when, as here, the defendant had no occasion to build the relevant factual record below. *Cf. Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("If we were to regularly address questions—particularly fact-bound issues—that district[] court[s] never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court.").

The Court's analysis in *Schwarzbaum* also left several questions open that, to the extent they need to be addressed in this case, would benefit from a developed factual record. In evaluating a fine's excessiveness, for example, the Supreme Court

31

has examined the defendant's "culpability relative to other potential violators" of the statute. *Bajakajian*, 524 U.S. at 339 n.12 (concluding that Bajakajian's culpability relative to "tax evaders, drug kingpins, or money launderers" was "small indeed"). And here, the district court appears to have accepted that Mr. Niksich's reporting failure fell on the less culpable end of the culpability spectrum—not a knowing or deliberate violation, but a "reckless" one. (Dkt. 56 pp. 34-35). Indeed, Mr. Niksich's level of scienter was markedly lower than Bajakajian's, whose forfeiture necessarily rested on a finding of heightened criminal willfulness. *See Bajakajian*, 524 U.S. at 325.

Then there's the lack of harm caused by Mr. Niksich's mistake. In applying the Excessive Fines Clause to a neighboring provision of the Bank Secrecy Act, the Supreme Court in *Bajakajian* focused on the harm caused by the defendant specifically—an issue nowhere developed or briefed below. *See id.* at 339; *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 435 (2001) (reading *Bajakajian* to have examined "the relationship between the penalty and the harm to the victim caused by the defendant's actions"); Pamela S. Karlan, *"Pricking the Lines": The Due Process Clause, Punitive Damages, and Criminal Punishment*, 88 Minn. L. Rev. 880, 901 (2004) ("[T]he Court seems to analyze the gravity of Bajakajian's offense solely from a retributivist perspective—asking how much harm his particular violation of the statute caused.").

32

In short, the excessiveness analysis is a record-intensive one, and that record has yet to be developed here. If the Court reaches the Eighth Amendment question, the only appropriate course is to remand and give Mr. Niksich a fair opportunity to present a full evidentiary record on the excessiveness issue. What Mr. Niksich "failed" to do was file a basic reporting form that he did not know existed and that was not a part of his income tax return. Mr. Niksich voluntarily disclosed the oversight after it was brought to his attention. Notably, the IRS originally agreed that the appropriate penalty for Mr. Niksich's mistake was approximately $400,000. Yet, the district court imposed penalties of more than $2.2 *million*—five times the amount that the IRS said was reasonable. That amount was calculated based on paper gains never realized by Mr. Niksich. The discrepancy highlights the need for a full record and ultimate determination by a factfinder on whether the penalty comports with the Eighth Amendment—and here, Mr. Niksich has requested a jury trial on his liability.[9] *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2130 (2024) (holding that there is a right to a jury trial when civil penalties "are designed to punish and deter, not to compensate," and are therefore "a type of remedy at common law that could only be enforced in courts of law").

---

[9] With respect to Mr. Niksich's affirmative defense that the maximum FBAR penalty is capped at $100,000, Mr. Niksich acknowledges this Court's decision rejecting the argument. This affirmative defense is preserved in the event the Supreme Court subsequently addresses this issue.

## IV.  The District Court Erred in Deciding As a Matter of Law That Mr. Niksich Acted Willfully.

Finally, even if the government is permitted to pursue additional penalties, any penalties based on willfulness could not be imposed as a matter of law because of genuine disputes of fact.  Whether someone has acted "willfully" depends on that person's intent and motivation.  *See, e.g.*, *Stanfield v. Answering Serv., Inc.*, 867 F.2d 1290, 1296 (11th Cir. 1989).  Questions of willfulness are usually not proper for summary adjudication because they involve questions of fact.  *See, e.g.*, *Butler v. Smith*, 85 F.4th 1102, 1117 (11th Cir. 2023); *Cantu v. City of Dothan*, 974 F.3d 1217, 1236 (11th Cir. 2020); *Greer v. Ivey*, 767 F. App'x 706, 712 (11th Cir. 2019) (per curiam); *Berry v. McGowan*, 743 F. App'x 321, 326 (11th Cir. 2018) (per curiam); *McCroden v. Bressett*, 668 F. App'x 867, 867-68 (11th Cir. 2016) (per curiam); *Claridy v. Golub*, 632 F. App'x 565, 571 (11th Cir. 2015) (per curiam); *see also United States v. Vernon*, 723 F.3d 1234, 1269 (11th Cir. 2013) ("The ultimate question of whether a defendant relied in good faith on advice of counsel and therefore did not act willfully is a question of fact to be resolved by the jury."); *Day v. Lib. Nat'l Life Ins. Co.*, 122 F.3d 1012, 1016 (11th Cir. 1997) (reiterating that "willfulness is a question of fact for the jury").  For example, this Court has noted that the issue of whether an individual "willfully attempted to evade or defeat" an income tax is "a question of fact."  *In re Mitchell*, 633 F.3d 1319, 1326 (11th Cir. 2011); *In re Zimmerman*, 262 F. App'x 943, 946 (11th Cir. 2008) (per curiam); *In*

34

*re Jacobs*, 490 F.3d 913, 921 (11th Cir. 2007); *see also United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012) ("Whether a person has willfully failed to comply with a tax reporting requirement is a question of fact.").  And for purposes of FBAR penalties, willfulness is "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *United States v. Rum*, 995 F.3d 882, 890 (11th Cir. 2021) (per curiam).

In the decision below, the district court got it backwards.  The district court assumed that if the government proffered any evidence indicating willfulness, then summary judgment should be granted.  For example, the district court stated that there was no evidence showing that Mr. Niksich's failure to report the foreign accounts was "accidental."  (*See* Dkt. 56 p. 36).  The court also relied on what the government contended were "indicia of recklessness."  (*See id.* p. 39).

But again, the evidence was supposed to be considered in the light most favorable to Mr. Niksich.  That facts *can* support an inference of willfulness does not mean that they *must*.  *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991).  As with the summary judgment standard generally, a court must draw *all* inferences in favor of the taxpayer when it comes to showing willfulness.  *George v. United States*, 819 F.2d 1008, 1012-13 (11th Cir. 1987) (reversing a directed verdict in a tax penalty case); *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) ("Summary judgment may be

inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment."). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1315 (11th Cir. 2007). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

These principles apply to an FBAR penalty based on willfulness. *See United States v. Schik*, 2022 WL 685415, at *6 (S.D.N.Y. Mar. 8, 2022) (denying the government's motion for summary judgment and noting that "[w]illfulness . . . must mean something more than mere negligence"); *United States v. Gregory*, 2019 WL 13203768, at *4 (N.D. Fla. Oct. 7, 2019) (denying the government's motion for summary judgment and noting that "willfulness is a state of mind, and '[a]s a general rule, a party's state of mind . . . is a question of fact . . . to be determined after trial'"); *United States v. Clemons*, 2019 WL 7482218, at *8 (M.D. Fla. Oct. 9, 2019) (denying the government's motion for summary judgment because of genuine disputes as to willfulness); *United States v. Flume*, 2018 WL 4378161, at *9 (S.D. Tex. Aug. 22, 2018) (same).

In this record, there are several facts indicating that Mr. Niksich's mistake was *not* willful. For example, Mr. Niksich provided unrebutted testimony that he first became aware of the FBAR requirement in 2013 or 2014—*after* the years at issue. (Dkt. 39-1 pp. 33-34, 42). Then, when the oversight was brought to his attention, Mr. Niksich voluntarily disclosed the accounts at issue to the IRS and agreed to pay all additional tax and interest attributable to any income generated in those accounts. *See, e.g., Flume*, 2018 WL 4378161, at *4 n.8 ("[F]inding willfulness even where the defendant acted promptly to rectify his error would create a perverse incentive. It would encourage taxpayers who have not filed FBARs on time to never file them at all in the hope that the IRS does not discover their foreign accounts.").[10]

Further, Mr. Niksich "really didn't understand how the structure worked overseas." (Dkt. 39-1 p. 40). Mr. Niksich believed that he was not required to report anything because he was not actively trading investments—the money "just sat there." (*Id.* p. 52). He assumed that the rules for foreign investments were the same as the rules for domestic investments—that they are not subject to tax until they are sold and a gain or loss is realized. (*Id.* p. 51). In addition, the money placed in

---

[10] The district court itself adopted as factual determinations that (1) "Mr. Niksich first became aware of the 'FBAR' around 2013 of 2014" and (2) "[i]n 2014, Mr. Niksich consulted an attorney and initiated a voluntary disclosure to the IRS to correct his tax filings." (*See* Dkt. 56 p. 18). These circumstances weigh *against* a finding of willfulness. *See Flume,* 2018 WL 4378161, at *6 ("[A] factfinder could infer that Flume learned of the FBAR requirements in 2010 from the fact that Flume filed overdue FBARs on June 28, 2010.").

foreign accounts was money on which Mr. Niksich had already paid taxes in the United States.  (*Id*. pp. 33, 57-58).

Moreover, Mr. Niksich only opened foreign accounts at the advice of his friend and accountant.  (*Id.* pp. 26-27).  The accountant did not advise Mr. Nikisch of any disclosure requirements.  (*Id.* p. 29).  And opening an account in Panama was not surprising because that is where Mr. Niksich intended to retire.  (*Id.* pp. 47, 62). He even became a permanent resident of the country.  (*Id.* p. 47).  The bank in Panama was fully aware of Mr. Niksich's status as a U.S. citizen and in fact requested that Mr. Niksich provide the bank with copies of his U.S. tax returns— which Mr. Niksich provided.  (Dkt. 39-2 pp. 119-20).

Ignoring all of these facts, the district court assumed that any taxpayer who prepares his own tax return and fails to disclose assets in a foreign bank account must have acted willfully.  But that cannot be right.  Congress has distinguished between willful violations and non-willful violations, and the former require a particular, culpable state of mind.  *See Schwarzbaum*, 114 F.4th at 1342 (explaining that "Congress specifically reserved the severe penalties . . . to only for those who 'willfully' violated the statute").  The Supreme Court has even noted that when looking at the statute, "what we do not see is any indication that Congress sought to maximize penalties for every nonwillful mistake."  *Bittner v. United States*, 598 U.S. 85, 99 (2023).

The district court also concluded that Mr. Niksich was "on inquiry notice of his FBAR filing requirement" because he prepared his own tax returns. (Dkt. 56 p. 36). But "inquiry notice" is not the standard. Even if the district court could conclude what Mr. Niksich should have known, that conclusion does not necessarily equate to willfulness or recklessness. As one district court judge observed, "[t]here is nothing intuitive in understanding the FBAR reporting requirements." *Kurotaki v. United States*, 2023 WL 6604892, at *7 (D. Haw. Oct. 10, 2023).

If the government is released from its bargain and allowed to assert additional penalties for the same tax years on which Mr. Niksich negotiated a settlement, then Mr. Niksich has a right to have a factfinder determine whether he acted willfully. The district court erred in depriving him of that right.

## **CONCLUSION**

For these reasons, the ruling of the district court should be reversed.

This 10th day of December, 2024.

*/s/ Kenton J. Coppage*
Kenton J. Coppage
Georgia Bar No. 187190
*kcoppage@foxrothschild.com*

FOX ROTHSCHILD LLP
999 Peachtree Street, N.E.
Suite 1500
Atlanta, Georgia 30309
(404) 962-1000 – *Telephone*
(404) 962-1200 – *Facsimile*
*Counsel for Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

In compliance with Federal Rule of Appellate Procedure 32(a)(7)(B)(i), the undersigned counsel hereby certifies that this Brief is typed in 14-point Times New Roman and complies with the type-volume limitation of FRAP 32(a)(7) and contains 8921 words.

*/s/ Kenton J. Coppage*
Kenton J. Coppage

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have caused a true and correct copy of the foregoing to be served via the Court's CM/ECF system, which shall send notification of such filing to all counsel of record as follows:

Michael F. Troy
U.S. Department of Justice
Post Office Box 14198
Washington, D.C. 20044

Matthew S. Johnshoy
U.S. Department of Justice
Post Office Box 502
Washington, D.C. 20044

This 10th day of December, 2024.

*/s/ Kenton J. Coppage*
Kenton J. Coppage
Georgia Bar No. 187190
*kcoppage@foxrothschild.com*
FOX ROTHSCHILD LLP
999 Peachtree Street, N.E.
Suite 1500
Atlanta, Georgia 30309
(404) 962-1000 – *Telephone*
(404) 962-1200 – *Facsimile*
*Counsel for Appellant*

41